A08A0694. LEMMING v. THE STATE.

(663 SE2d 375)

MILLER, Judge.

Following a bench trial, Lorraine H. Lemming was convicted of three counts of aggravated assault (in violation of OCGA § 16-5-21), three counts of cruelty to children (in violation of OCGA § 16-5-70), two counts of possession of a firearm during commission of a crime (in violation of OCGA § 16-11-106), and one count each of making terroristic threats, burglary, and armed robbery (in violation of OCGA §§ 16-11-37, 16-7-1, and 16-8-41, respectively). She now appeals from the trial court's denial of her motion for a new trial, arguing that the trial judge should have recused herself from hearing the case and that the Floyd County district attorney's office should have recused itself from prosecuting the same. Lemming also appears to assert an ineffective assistance of counsel claim, alleging that her trial counsel failed to communicate to her a plea agreement offered by the District Attorney's office prior to trial. Discerning no error, we affirm.

"The trial court's decision on a motion for a new trial will be upheld on appeal unless it was an abuse of discretion." (Citation and punctuation omitted.) *Holt v. State*, 260 Ga. App. 826, 827 (1) (581 SE2d 257) (2003). And, in reviewing that decision "[w]e view the evidence in the light most favorable to the verdict and do not weigh

the evidence or assess the credibility of the witnesses." (Citation and punctuation omitted.) *Spradlin v. State*, 262 Ga. App. 897 (587 SE2d 155) (2003).

So viewed, the record shows that at the time of Lemming's prosecution in 2006, the Floyd County district attorney was Leigh Patterson. Prior to assuming her office in 2003, Patterson had represented Lemming in two separate criminal matters, neither of which was related to the current case and both of which were resolved before she took office.

Lemming's ex-husband, Larry Lemming, retained Attorney Ronald Patton to represent Ms. Lemming in the current matter. During the initial stages of the prosecution, the two men met with Patterson at her office. At that time, Patterson explained that her previous representation of Ms. Lemming presented a potential conflict of interest that would bar her from personally participating in the prosecution of this case. She offered to remove her office entirely from the case, and ask the attorney general to appoint a district attorney from a neighboring county to prosecute the same. Alternatively, Patterson said that she could allow her office to prosecute the case, but without her involvement.

Patton and Mr. Lemming discussed the matter and, for strategic reasons, decided not to file a motion to disqualify Ms. Patterson's office from prosecuting the charges against Lemming. As Patton explained:

> [Larry] Lemming enjoyed a good relationship with Ms. Patterson. . . . And I told him that I enjoyed a good relationship with [the prosecuting attorney]. . . . I thought it would be foolhardy to run the risk of getting [another prosecutor] who wouldn't listen, wouldn't be compassionate, wouldn't consider Ms. Lemming's unique situation. . . . And Larry [Lemming] certainly agreed with that.

Patton later discussed the matter with Lemming, and she agreed with the decision not to seek the disqualification of Patterson's office. The case therefore went forward with Kay Ann Wetherington, an assistant district attorney for Floyd County, handling the prosecution of the same. Patterson had no involvement in the case nor did she discuss it with anyone.

The trial judge assigned to hear the case was Tambra Colston, a former Floyd County assistant district attorney. In her capacity as assistant district attorney, Judge Colston had prosecuted Lemming in 1995 on charges arising out of a 1994 shooting incident. Patton was aware of this fact, because he had represented Lemming in that case.

Prior to trial, Patton discussed with both Lemming and her ex-husband the possibility of moving to disqualify Judge Colston from hearing the case. Again, for strategic reasons, they decided against such a motion. Patton testified that he and Lemming were "pleased" that Judge Colston was the judge because of her previous treatment of Lemming and that of the three superior court judges on the Rome Judicial Circuit, he felt that Lemming was "better off" with Colston.

Patton originally negotiated a plea agreement under which Lemming would receive a ten-year sentence, with two years to serve in prison. The trial court, however, refused to approve that agreement, indicating that any plea would need to include a longer period of incarceration. The State eventually offered to allow Lemming to plead guilty in exchange for a sentence of twenty years, with ten years to serve. Lemming rejected this offer, because she did not want to serve any significant prison time, and the case proceeded to trial.

Prior to trial, Patton discussed with Lemming the option of waiving a jury trial, telling her that he did not think a jury trial was her best option, given the crimes charged and the evidence against her. Based on that advice, Lemming agreed to a bench trial before Judge Colston. The trial court found Lemming guilty on 11 of 20 counts charged in the indictment and sentenced her to a prison term of 90 years, with 30 years to be served in prison and the balance on probation. Lemming then filed a new trial motion, which was denied by the trial court.[1] This appeal followed.

1. We first address Lemming's assertion that both the Floyd County district attorney's office and Judge Colston should have recused themselves from her case, sua sponte. Because these claims of error were the direct result of strategic decisions made by Lemming and her trial counsel, they cannot serve as the basis for an appeal. See, e.g., *Floyd v. State*, 277 Ga. App. 166, 168 (626 SE2d 149) (2006) ("A defendant will not be allowed to induce an asserted error, sit silently hoping for an acquittal, and obtain a new trial when that tactic fails.") (citation and punctuation omitted).

The potential conflicts of interest that allegedly necessitated these recusals were: (i) Patterson's previous representation of Lemming; and (ii) Judge Colston's 1994 prosecution of Lemming. The undisputed evidence shows, however, that Lemming and her trial counsel were aware of these potential conflicts at the outset of this prosecution, and made deliberate, strategic decisions not to seek the

---

[1] That motion was decided by Senior Judge Cummings, after Judge Colston recused herself from hearing the same, because it was premised, in part, on the assertion that she should have recused herself from the trial of the case.

disqualification of either the Floyd County district attorney's office or Judge Colston.[2] Indeed, defense counsel declined a specific offer from Patterson to remove her office from the case.

We further note that, regardless of the self-induced error rule, Lemming has failed to demonstrate that either Patterson or Judge Colston acted improperly.

"[T]here is no duty for a trial judge to sua sponte recuse himself absent a violation of a specific standard of OCGA § 15-1-8 or Canon 3 (E) (1) (a) through (c) of the Code of Judicial Conduct. . . ." (Citations omitted.) *Phillips v. State*, 267 Ga. App. 733, 736 (2) (601 SE2d 147) (2004). Here, Lemming's claim that Judge Colston should have recused herself is based on Canon 3 (E) (1) (a), which provides, in relevant part: "Judges shall disqualify themselves in any proceeding in which their impartiality might reasonably be questioned, including . . . instances where . . . the judge has a personal bias or prejudice concerning a party. . . ."

In construing Canon 3, this Court has interpreted the phrase "impartiality might reasonably be questioned" as meaning the existence of "a reasonable perception of lack of impartiality by the judge, held by a fair minded and impartial person based upon objective fact or reasonable inference; it is not based upon the perception of either interested parties or their lawyer-advocates . . . ." (Citation omitted.) *Baptiste v. State*, 229 Ga. App. 691, 694 (1) (494 SE2d 530) (1997). A trial judge's failure to sua sponte recuse herself will warrant reversal only where "the conduct or remark of the judge [constitutes] an egregious violation of a specific [ethical] standard" (*BITT Intl. Co. v. Fletcher*, 259 Ga. App. 406, 410 (5) (577 SE2d 276) (2003) (citations omitted)), and it must support "the inescapable conclusion that a reasonable person would consider [the judge] to harbor a bias that affects his ability to be impartial." (Citations omitted.) *Turner v. State*, 280 Ga. 174, 176 (626 SE2d 86) (2006). See also *Phillips* supra, 267 Ga. App. at 736 (2) ("To merit recusal, any alleged bias must be of such a nature and intensity to prevent the defendant from obtaining a trial uninfluenced by the court's pre-judgment.") (citation and punctuation omitted).

Lemming supports her assertion that Judge Colston was biased against her by citing (i) the harsh sentence imposed by the trial court; (ii) Judge Colston's personal knowledge of Lemming, which resulted from the Judge's previous prosecution of her; and (iii) allegedly improper remarks Judge Colston made in an unrelated trial involving Lemming's son and daughter-in-law.

---

[2] Tellingly, Lemming did not assert in her new trial motion an ineffective assistance of counsel claim based on these strategic decisions.

Given that the sentence was within the parameters provided by the law, we cannot say that it evidences bias. Additionally, evidence of Lemming's prior prosecutions, including the 1994 case prosecuted by Judge Colston, was introduced by the State at the sentencing phase of trial. This evidence would have been before any trial judge, and the mere fact that Judge Colston had participated in one of Lemming's several prior prosecutions does not give rise to a presumption that she was somehow biased against Lemming. See *Baptiste*, supra, 229 Ga. App. at 697 (1) ("The fact that the judge has sat on prior cases of the party or ruled on prior matters in the case before the judge is legally insufficient as a grounds for recusal.") (citations omitted). Moreover, at the motion for new trial hearing, defense counsel conceded that a judge's having prior knowledge of a defendant or her family did not constitute evidence of bias.

Finally, at the motion for new trial hearing, the trial court specifically excluded evidence of Judge Colston's allegedly improper remarks, finding they were irrelevant because they were made post-trial. Lemming has not appealed the exclusion of that evidence; it is not part of the record before this Court; and it therefore cannot be considered for purposes of this appeal. See, e.g., *Antoskow & Assoc., LLC v. Gregory*, 278 Ga. App. 468, 471 (629 SE2d 1) (2005) ("[A] brief or an attachment thereto cannot be used in lieu of the record for adding evidence to the record.") (punctuation omitted).

Nor do we find any merit in Lemming's argument that Patterson's potential conflict of interest as to the current case automatically disqualified the Floyd County district attorney's office from prosecuting the same. The Supreme Court of Georgia has held that the previous representation of a criminal defendant by a lawyer in the district attorney's office does not automatically disqualify other members of that office from prosecuting the case. *Sealey v. State*, 277 Ga. 617, 619 (4) (593 SE2d 335) (2004). Rather, the other lawyers on the district attorney's staff may continue with the case so long as the attorney who previously represented the defendant (i) did so in an unrelated proceeding; and (ii) is properly "screened from any direct or indirect participation" in the current prosecution. Id. See also *Billings v. State*, 212 Ga. App. 125, 129 (4) (441 SE2d 262) (1994) ("Vicarious disqualification of a government department is not necessary or wise, and the individual lawyer should be screened from any direct or indirect participation in the matter, and discussion with colleagues concerning the case should be prohibited. [Cit.]"). Both of these requirements were met by Patterson. As noted, supra, the matters on which she had previously represented Lemming were unrelated to the current case. Additionally, Patterson neither participated in the prosecution of the current case nor discussed it with any of her colleagues.

2. Lemming further asserts that her trial counsel was ineffective because he failed to communicate to her a plea agreement offered by the district attorney's office prior to trial. There was evidence presented at the motion for new trial hearing, however, supporting the conclusion that this plea offer was communicated to Lemming, and that she rejected the same. We therefore find no error in the trial court's refusal to grant Lemming a new trial on this ground. See *McDaniel v. State*, 279 Ga. 801, 802 (2) (a) (621 SE2d 424) (2005).

For the reasons set forth above, we affirm the trial court's order denying Lemming's motion for a new trial.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED MAY 23, 2008 —
RECONSIDERATION DENIED JUNE 23, 2008.

*Fred R. Simpson, Floyd H. Farless*, for appellant.
*Leigh E. Patterson, District Attorney*, for appellee.